**GROLIER INCORPORATED, et al., Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**Nos. 82–7018, 82–7178.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1982.

Decided Feb. 10, 1983.

As Amended March 2, 1983.

Frederick P. Furth, San Francisco, Cal., for petitioners.

David C. Shonka, Washington, D.C., for respondent.

On Petition For Review of an Order of the Federal Trade Commission.

Before KILKENNY and POOLE, Circuit Judges, and D. WILLIAMS *, Senior District Judge.

DAVID W. WILLIAMS, Senior District Judge.

Grolier, Incorporated [Grolier] petitioned for review of a cease and desist order of the Federal Trade Commission [FTC] respecting certain of its sales and recruiting practices. Petitioner is engaged in the door-to-door and mail order sale of encyclopedias and other reference publications. This case was before us once before and we remanded to the FTC to reconsider whether the ad-

ministrative law judge [ALJ] should be disqualified and whether Grolier should be granted additional discovery on the subject of such disqualification. *Grolier, Inc. v. FTC,* 615 F.2d 1215 (9th Cir.1980) [*Grolier I*].

The issues presented by this petition are (1) whether the Commission on remand was correct in declining to disqualify ALJ von Brand and refusing to allow the taking of his and others depositions; (2) whether the FTC order is reasonably related to Grolier's deceptive and misleading commercial practices; and (3) whether the Commission abused its discretion by proceeding against Grolier through adjudication rather than by fashioning rules or standards for the entire industry.

## THE DISCOVERY/DISQUALIFICATION ISSUE

Prior to his appointment as an ALJ, von Brand served as an attorney-advisor to former FTC Commissioner MacIntyre from 1963 to 1971. ALJ von Brand became hearing officer in this case after the original ALJ retired in 1975 and another recused himself. At petitioner's insistence, he began what was practically de novo pretrial hearings. After von Brand had presided in the case almost a full year, Grolier's president testified that he may have met with Commissioner MacIntyre in 1966.[1] Von Brand responded that he had no recollection of any matters involving Grolier in his work for the Commission. Grolier then promptly demanded von Brand's recusal under the Administrative Procedure Act 5 U.S.C. § 554(d) [APA] which provides:

> An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review . . .

---

\* The Honorable David W. Williams, Senior United States District Judge for the Central District of California, sitting by designation.

1. The actual testimony was "I only recall having met Mr. MacIntyre and I don't remember, or I think, I am quite sure at one of the earlier discussions with the chairman he was there, but it was a very informal discussion just trying to say who I was and where I hoped to be able to take the company in the following 20 years."

except as witness or counsel in public proceedings.

Von Brand refused to disqualify himself, stating that legal advisors to Commissioners were not agency employees within § 554(d).

On appeal, we reversed, holding that the ALJ's former position was covered under the APA. In tracing the legislative history of the APA, we found that Congress intended to forbid persons who were engaged in the performance of investigative or prosecuting functions, or who were privy to ex parte information concerning a case, from participating in the decision-making process in that case. *Grolier I* specifically rejected the company's contention that disqualification is automatic if the ALJ held his former position during a time when an FTC investigation of Grolier was in progress:

> We conclude, therefore, that under 554(d) attorney-advisors are precluded only from participating in the adjudication of cases in which they have actually performed [investigative and prosecuting] functions, and in "factually related" cases.

615 F.2d at 1221.

■ Hence, for purposes of disqualification, the ALJ is not chargeable with involvement in all cases that were before the agency during his advisorship. Rather, Grolier must prove that von Brand had actual possession of ex parte information concerning the investigation or had participated in some meaningful way in the events that led to the agency's decision to prosecute.[2]

In remanding for reconsideration of the disqualification issue, *Grolier I* also addressed the discovery that the company should be granted on the matter:

> We do not say that the FTC must grant discovery; but we do say that a flat refusal to disclose anything at all about ALJ von Brand's prior involvement in the

Grolier case is error. The FTC must produce sufficient information to permit it and a reviewing court, to make an accurate 554(d) determination.

*Id.* at 1222.

Following *Grolier I,* the agency furnished Grolier with von Brand's declaration which disclaimed receiving any ex parte information about the Grolier case while acting as attorney-advisor. The FTC also furnished the affidavit of former Commissioner MacIntyre in which he stated that to the best of his recollection he did not discuss Grolier with Mr. von Brand and he was aware of no contacts von Brand may have had with any Grolier matters as an attorney-advisor.[3] Grolier now demands that it be allowed not only to take von Brand's deposition, but also the deposition of MacIntyre, von Brand's secretary and a former attorney-advisor.

The first remand was not an order that the FTC allow depositions. We merely stated that:

> While the FTC may grant discovery, it may, initially, respond in the form of affidavits as to the existence and extent of ALJ von Brand's involvement with the Grolier case while he served as attorney-advisor. (cites omitted). If these sworn statements adequately disclose the existence or non-existence of ALJ von Brand's involvement in prior Grolier matters, Grolier, who has the burden of proof on the disqualification issue, may rightfully be 'obliged either to offer evidence contradicting the sworn statements of the [FTC], or to point out the inadequacy and inconsistency, if any, in the sworn statements' before it will be permitted to subpoena FTC records. *R.A. Holman & Company v. SEC, Supra.* 366 F.2d at 454."

---

2. The burden of proof is upon Grolier to show that von Brand should have been disqualified. *R.A. Holman & Co. v. SEC,* 366 F.2d 446, 452 (2d Cir.1966).

3. Furthermore, Grolier acquired much more information from the FTC than the two affidavits. At an earlier stage of these proceedings,

after the FTC refused to disqualify von Brand, Grolier received exhaustive document discovery from the FTC both voluntarily and through a Freedom of Information Act request. Apparently, Grolier could find nothing in all these documents which connected the ALJ to the instant case.

We conclude that von Brand's and MacIntyre's submitted declarations adequately show that the ALJ was not involved in the Grolier investigation. Grolier has neither offered sufficient evidence nor pointed out any inadequacy or inconsistency in the sworn statements to warrant further discovery or to bear its burden on the disqualification issue.

Moreover, Grolier points to nothing tangible that it could explore through the depositions it requests. We feel that Grolier is seeking to engage in a pure fishing expedition through these depositions and is attempting to return this marathon administrative proceeding to square one to further delay the imposition of the FTC's cease and desist order. We decline to be a party to these dilatory tactics.

Grolier also argues that due process requires the ALJ's disqualification to avoid the appearance of impropriety. This argument is on weak ground since the Supreme Court gives "a heavy presumption of honesty and integrity in those serving as adjudicators" with respect to a due process claim of bias. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Any appearance of impropriety here has been dispelled by the affidavits of MacIntyre and von Brand.

### PROPRIETY OF THE CEASE AND DESIST ORDER

The Commission found that Grolier had engaged in a number of false, deceptive and misleading trade practices, and the company does not challenge these findings. Grolier used many deceptive recruiting techniques such as "blind" advertisements, ads misrepresenting employment positions as nonselling, and ads listing "management trainee" positions that did not exist.

The company also employed fraudulent methods to develop sales leads including false surveys, promotions and contests whose only purposes were to ensnare potential customers. Grolier instructed its door-to-door salespeople to use deception in gaining entrance into homes, to misrepresent prices and to produce false and misleading endorsement letters. Finally, Grolier regularly used fraudulent and questionable debt collection practices. In short, the undisputed record discloses that deceptive practices permeated virtually every aspect of the company's recruitment activity and its relationship with customers and potential customers.

To combat Grolier's illegal activity, the FTC order requires the company to disclose in its recruitment advertising for door-to-door salespeople the nature of the job offered and the basis for compensation; it prohibits Grolier from distributing any promotional materials or advertisements that solicit a response from a prospective customer unless the materials clearly state that the person responding may be contacted by an encyclopedia sales representative; it requires each salesperson to present to everyone he visits at home a 3 × 5 card stating that the purpose of the visit is to sell encyclopedias, and, it prohibits Grolier from using inflated "retail" prices for individual items as a basis for comparing "combination" prices and to offer "free" merchandise which in fact is not free by imposing certain requirements on the way prices may be presented. Appellant argues that several of these remedies are inappropriate to the practices sought to be eliminated.

Generally, a review of a FTC order must determine whether the Commission's remedial actions were "reasonably related" to the evil to be prevented.

> [The FTC] has wide latitude for judgment and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist.

*Litton Industries, Inc. v. FTC,* 676 F.2d 364, 369 (9th Cir.1982). The reasonable relationship test is applied by examining the specific circumstances of the case and, ultimately, determining the likelihood of Grolier committing the unfair practices addressed in the order. *Sears Roebuck & Co. v. FTC,* 676 F.2d 385, 391 (9th Cir.1982). Two important factors in determining petitioner's willingness to flout the law are the deliber-

ateness and seriousness of the present violation and the violator's past record with respect to unfair practices. *Standard Oil of Calif. v. FTC*, 577 F.2d 653, 662 (9th Cir. 1978).

Because the FTC order limits the company's speech, however, Grolier asserts that the standard of review on appeal is to analyze alternative remedies and narrowly tailor the relief to the interest involved. Grolier bases this contention on the demise of the commercial speech exception to the First Amendment, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), and the least restrictive alternative analysis prevalent in First Amendment cases.

 Appellant's contention is incorrect. The commercial speech exception is still applicable if the commercial expression at issue is unlawful or misleading. *Central Hudson Gas and Electric Corp. v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Since Grolier's practices are both illegal and misleading, First Amendment protections do not apply to the FTC's order, *Sears Roebuck & Co. v. FTC, supra* at 399. Moreover, the provisions of the FTC order affecting the direct solicitation of customers by Grolier salespeople are even less subject to constitutional constraints. In person solicitation, because of its potential for abuse, can be more strictly regulated than public advertising. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 457, 98 S.Ct. 1912, 1919, 56 L.Ed.2d 444 (1978).

Hence, we must analyze each of the order's remedial provisions challenged by Grolier to see that it bears a reasonable relation to the illegal trade practice it seeks to prevent.

### The Warning Card Provision

 The order commands Grolier sales representatives to show all customers a 3 × 5 card stating that "the purpose of this representative's call is to solicit the sale of encyclopedias." The record shows that Grolier has directed its salespeople to deliberately misrepresent the purpose of their home visits so that this warning card requirement is reasonably related to preventing these abuses. Such a remedy has been used in the past to correct similar unlawful activity. *Encyclopaedia Britanica, Inc. v. FTC*, 605 F.2d 964 (7th Cir.1979), *cert. denied*, 445 U.S. 934, 100 S.Ct. 1329, 63 L.Ed.2d 770 (1980). Any less stringent disclosure requirement would be difficult to enforce and might allow Grolier to continue its deceptive practices.

### Notice to Consumer Provisions

The order requires Grolier to place a notice in its lead gathering materials which warns that a person returning such forms or entry blanks may be contacted by a sales representative. The company claims that the need for this notice remedy was unsupported by substantial evidence.

 The FTC's findings are proper if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *RSR Corp. v. FTC*, 602 F.2d 1317, 1320 (9th Cir. 1979). The record shows that Grolier ran deceptive national advertisements at least 15 times prior to 1972, when the FTC first filed a complaint against the company. This is clearly enough evidence to support the FTC's finding and also to show that the notice remedy bears a reasonable relation to Grolier's deceptive lead gathering activities.

### The Recruiting Provisions

 The FTC ordered Grolier to make certain affirmative disclosures to its employment applicants, including a verbatim copy of the cease and desist order. The company asserts that the disclosures will unduly hamper its recruitment efforts and requests that the provision be deleted. These protestations are undercut by the abundant evidence of gross misrepresentations of fact that Grolier made in its employment advertising and hiring activities. Requiring an employment advertisement to state the truth should not be overly burdensome to any recruitment effort.

*The Pricing Provisions*

The cease and desist order prohibits Grolier salespeople from referring to any price as a retail price unless a "substantial number of unit sales are made at or above the represented price." The Commission found that the company frequently stated an inflated cost for its individual products, leading prospective customers to believe they were getting a special reduced rate for buying in bulk. Grolier also gave customers a list of prices for individual products which were much higher than combination prices, when, in fact, most salespeople were unauthorized to make individual sales.

The Commission found that these pricing practices were misleading and its order is narrowly tailored to eliminate them. Grolier's claims that the provisions are too costly and unnecessary are not well taken.

## THE ABUSE OF DISCRETION CLAIM

Finally, Grolier asserts that the FTC's order is an abuse of discretion because it promulgates new industry standards which should be dealt with on an industry wide basis, rather than through a ruling against an individual company.

Contrary to the company's contentions, the Commission's order adheres to established industry standards. *See e.g., Encyclopaedia Britanica v. FTC*, 605 F.2d 964 (7th Cir.1979); *Americana Corp.*, 45 F.T.C. 32 (1948), *modified* 46 F.T.C. 253 (1949). The unlawful business practices involved in this case have long been the subject of litigation by the Commission and the same remedy for these abuses has been imposed upon Grolier's competitors. *See Encyclopaedia Britanica, Inc. v. FTC, supra.* Grolier's abuse of discretion claim is groundless.

We conclude that the findings of the Commission are supported by substantial evidence and that the remedies provided were reasonably related to those findings.

The order of the Board is AFFIRMED and ENFORCED.

POOLE, Circuit Judge, dissenting.

I respectfully dissent, believing that Grolier was entitled to a confrontation by way of deposition with respect to its not-unreasonable concern that Administrative Law Judge von Brand's official position had been sufficiently close to the historical litigation of the case as to raise questions concerning his suitability for adjudication.

In *Grolier I* we rejected the contention that mere contemporaneity of tenure during prior litigation called for disqualification. The majority correctly adverts to this ruling. But I question whether having to proceed in the light of Judge von Brand's prior relationship as attorney-advisor for eight years during former Commissioner MacIntyre's tenure would not cause the average litigator to be very apprehensive when that attorney-advisor now sits on the issues with which his principal had dealt. Normally we would test any basis of conflict by the "engine" of cross-examination. A deposition with face to face questions and answers would permit such testing; an already-prepared affidavit provides no similar satisfaction.

Grolier's conduct of the litigation has left some tension in feelings but I believe a deposition could be kept entirely within bounds while the issue was explored. The majority has denied this right to Grolier and hence I dissent.